# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

KARI FINLEY,

                         CV 11-142-M-DWM-JCL

            Plaintiff,

    vs.

                         FINDINGS AND

KEN L. SALAZAR, in his          RECOMMENDATIONS
official capacity as the
Secretary of the Interior,

           Defendant.

_____

      Plaintiff Kari Finley (Finley) brings this employment discrimination action

against her employer pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e et. seq., alleging claims of hostile work environment, failure to

promote, and retaliation. Defendant Ken L. Salazar (Defendant) has moved for

summary judgment as to all of Finley's claims. For the reasons set forth below,

the motion should be granted.

# I.    __Background__[1]

Finley was hired by the United States Department of the Interior, United States Geological Survey on June 6, 1999, to work as a hydrologic technician in the Kalispell field office. Dkt. 17, at 2; Dkt. 15, at 2. Hydrologic technicians are generally responsible for collecting surface and ground water data in the field, and then interpreting that data in an office environment. Dkt.17, at 2-3. Hydrologic technicians can be placed in positions at the GS-1 though GS-11 grade levels, depending on their education, experience, and abilities. Dkt. 17, at 2. Each GS level has its own position description, which defines the requirements and responsibilities of that position. Dkt. 17, at 2.

Finley was hired at the GS-5 grade level, and promoted to GS-6 in 2000, GS-7 in 2001, and GS-8 in 2003. Dkt. 17, at 4. Finley unsuccessfully sought a promotion to the GS-9 level in October 2009, June 2010, and again in 2011. Dkt. 23, at 5; Deposition of Kari Finley (Sept. 13, 2012) 109:25-110:10. Finley was promoted to a GS-9 grade level position in January 2012, approximately three months after she commenced this lawsuit. Dkt. 15, ¶ 11; Finley Dep. 110:5-7.

---

[1] Consistent with well-established summary judgment standards, the following facts are taken from the materials of record and, where disputed, viewed in the light most favorable to the Plaintiff as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007)

When Finley was first hired in 1999, Laverne Schultz was the supervisor at the Kalispell field office. Dkt. 15, 19. Schultz retired in 2007, and Allan Furlow was hired to replace him. Dkt. 15, at 6. Furlow was subsequently relieved of his supervisory duties, and Frank Johnson became the supervisor of the Kalispell office in the fall of 2009. Dkt. 15, at 7.

On April 28, 2010, Finley contacted an Equal Employment Opportunity ("EEO") counselor, alleging she had been discriminated against based on her race, Native American, and her gender. Dkt. 23-3, at 2. Finley outlined three claims, alleging she had been subjected to race and gender discrimination: (1) "when on April 23, 2010, during an interim performance review, her supervisor told her to find another job and he had no respect for her"; (2) "on March 10, 2010, when her supervisor told another employee he could 'ride in on beer cans and use them as traction to get to the gage house'"; and (3) "when she was denied a promotion in October 2009." Dkt. 23-2, at 2.

When the informal EEO process failed to resolve the matter to her satisfaction, Finley filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") on July 21, 2010. Finley Dep. Ex. 3. Finley's formal complaint raised the same claims, which she described as follows:

> I was denied a promotion in October 09 because of race and sex. On

April 23, 2010 my supervisor told me to find another job because of my race and sex. On March 10, 2010 the same supervisor told another employee I could ride in on beer cans and use them as traction. Discrimination based on my race as American Indian.

Dkt. 23-3, at 13.

Based on its review of the complaint, the EEOC identified and accepted the following claims for further processing:

Whether the Complainant was discriminated against on the bases of race (Native American), and sex (Female), when:

1.      On March 10, 2010, April 23, 2010, and other unspecified dates, the Complainant was subjected to a hostile work environment by her immediate supervisor; and,

2.      Since October 2009, the Complainant was denied a career-ladder promotion to the GS-1316-9 grade level.

Dkt. 23-3, at 132.

The EEOC released its Report of Investigation in February 2011, and Finley requested a hearing. Dkt. 23-3, at 71, 73. Finley withdrew her request for a hearing on her EEOC complaint approximately five months later, and the EEOC apparently entered its final order closing the case on August 31, 2011. Finley Dep. Ex. 4; Dkt. 13, at 4; Dkt. 16, at 14.

Finley commenced this lawsuit on October 21, 2011. Dkt. 1. She alleges that Defendant (1) discriminated against her based on her race and gender

"beginning on March 10th, 2011[2] and continuing until the present"; (2) retaliated against her after she "complained of the discriminatory conduct towards her," and; (3) denied her "promotions because of the discrimination and has created a hostile work environment with the purpose to discriminate against [her] and to force her to resign her position with Agency, all in violation of Title VII of the Civil Rights Act." Dkt. 1.

Defendant moves for summary judgment as to Finley's retaliation and failure to promote claims on the ground that she failed to exhaust her administrative remedies. Defendant also argues it is entitled to summary judgment on all of Finley's claims, including her claims for retaliation, failure to promote, and hostile work environment, because she cannot establish a prima facie case under any of these theories.

## II.   **Summary Judgment Standards**

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for

---

[2] As Defendant points out, this date is likely a typographical error and Finley meant to allege March 10, 2010, which is the date she claims her supervisor made one of his objectionable statements.

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. An issue of fact is "genuine" if there is sufficient evidence for a reasonable factfinder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49. A fact is "material" if may affect the outcome of the case. *Id.* at 248. In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50.

## III.    Discussion

### A.    Failure to Promote

As a jurisdictional prerequisite to bringing suit under Title VII, a plaintiff must first exhaust her administrative remedies by filing a timely charge with the EEOC or the appropriate state agency.  *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002); 42 U.S.C. § 2000e-5(e); 2000e-16.  This exhaustion "requirement serves the purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."  *B.K.B.*, 276 F.3d at 1099 (*quoting Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).  The federal courts require "strict adherence" to the exhaustion requirement.  *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002).  "[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  *Morgan*, 536 U.S. at 108 (*quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980).

To the extent a plaintiff complains of more than one discrete discriminatory act, she must timely exhaust her administrative remedies as to each alleged act. *Morgan*, 536 U.S. at 114.  A plaintiff's failure to exhaust administrative remedies on any Title VII claim leaves the district court without subject matter jurisdiction to consider the claim.  *Freeman v. Oakland Unified School Dist.*, 291 F.3d 692,

638 (9th Cir. 2002).

The applicable statutory and regulatory scheme contains several time limitations with which a plaintiff must comply before proceeding in federal court. Among these is the requirement that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  While this regulatory deadline "'does not carry the full weight of statutory authority,'" the Ninth Circuit has "consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] fatal to a federal employee's discrimination claim' in federal court." *Kraus v. Presidio Trust Facilities Div./Residential Management Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (*quoting Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002)).

Defendant argues that Finley's failure to promote claim should be dismissed because she did not initiate contact with an EEO counselor within this 45-day period.  The record reflects Finley initiated contact with an EEO counselor on April 28, 2010, alleging she had been unlawfully denied a promotion in October 2009.  Dkt. 23-2, at 2.  Finley thus waited approximately six months to contact an EEO counselor about the alleged discriminatory action, long after the 45-day

period had run. Finley does not argue that the doctrines of waiver, estoppel, or equitable tolling should apply here to extend the 45-day time limit. In fact, Finley presents no argument at all in opposition to this portion of Defendant's summary judgment motion. Because the undisputed evidence of record establishes that Finley did not initiate contact with an EEO counselor within 45 days of her denied promotion, her Title VII claim challenging the failure to promote is barred based on her failure to timely exhaust her administrative remedies.

### B.    Hostile Work Environment

Finley claims she has been subjected to a hostile work environment because of her race and sex in violation of Title VII. To establish a prima facie case for a hostile work environment claim based on either race or sex, Finley must establish: "(1) that [s]he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Finley must present evidence that her work environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that [she] in fact did perceive to be so." *Faragher v.*

*City of Boca Raton*, 524 U.S. 775, 787 (1998).  Factors for the court to consider in evaluating the objective hostility of a work environment "include 'the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113 (9th Cir. 2004) (*quoting Nichols v. Azteca Rest. Enter.*, 265 F.3d 864, 872 (9th Cir. 2001)).  "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII." *McGinest*, 360 F.3d at 1113.  Likewise, "simple teasing, ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of the employment." *Faragher*, 524 U.S. at 788.  The United States Supreme Court has made clear that Title VII is not a "general civility code" and is not meant to address "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788.

Finley claims her supervisor, Frank Johnson, made offensive comments that created a hostile work environment.  As she did in her EEOC charge, Finley alleges that Johnson told her during an interim performance review in April 2010 that he had no respect for her and that she needed to find another job.  Finley also

claims that in March 2010, she heard Johnson tell another employee that he could ride into sites located on an Indian reservation on beer cans and use them as traction. Finley Dep. 133:6-134:24. Finley also claims that Johnson's supervisor, Wayne Burkas, told her at one point that Johnson was treating her like that because she was Native American, and because she was a woman. Dkt. 22, at 7; Finley Dep. 141:2-142:3. Finally, Finley alleges that shortly after she had shoulder surgery in January 2010, Johnson became angry when she said she could not go to some job sites with him and said "that fucking pisses me off." Dkt. 22, at 8; Finley Dep. 123:20-24.

According to Finley, she found these comments offensive. While that may be, Johnson's few, isolated comments were not frequent, severe, or pervasive enough to interfere unreasonably with Finley's employment and create a hostile work environment. *See e.g. Vasquez*, 349 F.3d at 643-44 (no hostile work environment where employee was told he had "a typical Hispanic macho attitude," was yelled at, and was told he should work in the field because "Hispanics do good in the field")*; Kortan v. California Youth Authority*, 217 F.3d 1104, 1111-112 (9th Cir. 2000)(no hostile work environment where supervisor repeatedly referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff and called plaintiff "Medea"); *Sanchez v. City of Santa Ana*, 936 F.2d

1027, 1031, 1036 (9th Cir. 1990) (no hostile work environment where, in the words of the *Vasquez* court, 349 F.3d at 643, "the employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino").

Finley also alleges that Johnson has created a hostile work environment because he does not flush the toilet or shut the door after defecating in the bathroom near her desk. Dkt. 22, at 8. At her deposition, Finley testified that Johnson "leaves the door open" after using the bathroom so that she has to use air freshener, sometimes fails to flush the toilet, and "just leaves a total mess" in the bathroom. Finley Dep. 143:1-144:24.

To prevail on her hostile work environment claim, however Finley must show, among other things, that she "was subjected to verbal or physical conduct of a racial or sexual nature." *Vasquez*, 349 F.3d at 642. In other words, Finley must show that she was subjected to conduct because of her membership in a protected class. Finley does not explain how Johnson's allegedly offensive bathroom habits have anything to do with her race or gender, and does not point to any evidence suggesting that Johnson has directed his allegedly messy behavior in the bathroom

at Finley because of her race or gender.   Even considering Johnson's allegedly

poor bathroom habits in conjunction with the occasional comments Johnson found

offensive, Johnson's conduct was not  pervasive or severe enough to alter the

terms and conditions of Finley's employment.  Johnson's hostile work

environment claim thus fails as a matter of law.

### C.    Retaliation

Title VII's retaliation provision makes it unlawful for an employer to

discriminate against an employee for engaging in a protected activity. 42 U.S.C. §

2000e-3(a).  To establish a prima facie case of retaliation, a plaintiff must show

that (1) she engaged in a protected activity; (2) her employer subjected her to an

adverse employment action; and (3) there was a causal link between the protected

activity and the adverse employment action.  *Ray v. Henderson*, 217 F.3d 1234,

1240 (9th Cir. 2000).

In her complaint, Finley alleges generally that Defendant retaliated against

her after she "complained of the discriminatory conduct towards her."  Dkt. 1.

Finley has articulated this claim more specifically in response to Defendant's

summary judgment motion.  Dkt. 22, at 3-6.  Her theory is that Defendant

retaliated against her for initiating the EEOC complaint process in April 2010 by

(1) refusing to promote her to a GS-9 level in June 2010 and again in 2011, and

(2) subjecting her to a hostile work environment.[3]  Dkt. 22.

Defendant argues this claim must be dismissed in its entirety because Finley has not exhausted her administrative remedies.  Defendant points out that Finley did not allege a retaliation claim in her EEOC complaint and never raised retaliation as a theory during the administrative proceedings.  Finley's only claims at the administrative level were that she had been discriminated against based on her race and gender when she was denied a promotion in October 2009, and twice in the spring of 2010 when her supervisor made comments she found offensive.  Dkt. 23-2, at 2; 23-3, at 13.  Because Finley did not raise retaliation as a claim in her EEOC charge, Defendant argues that the retaliation claim she brings here should be dismissed as unexhausted.

Finley concedes that she did not file a retaliation claim with the EEOC, but argues she was not required to do so before bringing the claim here.  For support, Finley relies on a line of authority recognizing a limited exception to the exhaustion requirement under Title VII for claims that are "like or reasonably related" to the allegations in the EEOC charge.  In particular, Finley points to several cases holding that a claim of retaliation for filing an EEOC charge is

_____

[3]  Finley was promoted to GS-9 in January 2012, roughly three months after she initiated this lawsuit Dkt. 15, ¶ 11.

"reasonably related" to that charge and so need not be separately exhausted.  *See e.g., Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir. 1991); *McKenzie v. Illinois Dept. of Transportation*, 92 F.3d 473, 482-83 (7th Cir. 1996); *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981).

In *Bouman*, for example, the plaintiff sued her employer, alleging sex discrimination in violation of Title VII.  *Bouman*, 940 F.2d at 1217.  The plaintiff also alleged that her employer retaliated against her for filing the sex discrimination charge with the EEOC.  *Bouman*, 940 F.2d at 1218.  The defendant argued that the plaintiff's retaliation claim was barred because she did not file a separate charge with the EEOC alleging retaliation.  *Bouman*, 940 F.2d at 1229.  The Ninth Circuit disagreed, concluding "that her retaliation claim [was] 'reasonably related' to her prior sex discrimination claim" because there was evidence that her employer knew she had filed the sex discrimination claim and turned her down for a transfer "because she had exercised her right to file with the agency." *Bouman*, 940 F.2d at 1229.

The Ninth Circuit thus held that the plaintiff's retaliation claim could be considered under the rule set forth in *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) and *Ramirez v. National Distillers and Chemical Corp.*, 586 F.2d 1315, 1318-19 (9th Cir. 1978).  *Bouman*, 940 F.2d at

1229. *Oubichon* held that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Oubichon*, 482 F.2d at 571. The court reasoned that "[t]o force an employee to return to the state agency every time he claims a new instance of discrimination in order to have the EEOC and the courts consider the subsequent incidents along with the original ones would erect a needless procedural barrier." *Oubichon*, 482 F.2d at 571.

In *McKenzie*, the Seventh Circuit expressly followed *Bouman* in holding that it is unnecessary for a plaintiff to exhaust administrative remedies prior to bringing a claim alleging retaliation for filing an EEOC charge. *McKenzie* found the following logic persuasive: "It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case – a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intend of Title VII." *McKenzie*, 92 F.3d at 482 (*quoting Gupta*, 654 F.2d at 414).

Under the expansive rule established by this line of cases, a retaliation claim

would always be "related to" the EEOC charge simply by virtue of the fact that it alleges retaliation for filing the charge. Finley asks the Court to apply the *Bouman* approach here, and hold that she was not required to separately exhaust her retaliation claim before filing suit in federal court.

As Defendant points out, however, the legal landscape changed with the United States Supreme Court's subsequent decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which held that a plaintiff who complains of more than one discrete discriminatory or retaliatory act, such as failure to promote, must timely exhaust her administrative remedies as to each alleged act. *Morgan*, 536 U.S. at 114. The plaintiff in *Morgan* alleged discrete retaliatory and discriminatory acts, as well as a racially hostile work environment. *Morgan*, 536 U.S. at 104. In considering the timeliness of those claims, the Court held that discrete discriminatory and retaliatory acts, such as failure to promote, "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 112. *Morgan* thus abrogated the continuing violation doctrine as previously applied by the Ninth Circuit to claims of discrete discriminatory and retaliatory conduct. *Morgan*, 536 U.S. at 110-13.

In doing so, *Morgan* made a point of distinguishing between discrete acts of discrimination and hostile work environment claims. The Court acknowledged

that hostile environment claims "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. The Court concluded that if "an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

Thus, under *Morgan*, the continuing violations doctrine still applies to claims of hostile work environment, but not to claims for discrete acts of discrimination and retaliation. *Morgan* replaced the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory action "with the principle that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Padilla v. Bechtel Constr. Co.*, 2007 WL 1219737 *4 n.4 (D. Ariz. Apr. 25, 2007) (*citing Morgan*, 536 U.S. at 110-13).

Finley argues that *Morgan* is distinguishable because all of the discriminatory acts the plaintiff complained of in that case took place before he filed his charge with the EEOC. As Finley points out, she has alleged that Defendant retaliated against her after and because of her EEOC charge. While *Morgan* is distinguishable on this basis, and also because it involved a statute of

limitations issue rather than an exhaustion issue, the effect of these distinctions is unclear. *Morgan*, 536 U.S. at 105.

Other courts have struggled with the question of how *Morgan* applies to the issue of exhaustion of administrative remedies where, as here, a plaintiff alleges acts of retaliation that post-date the filing of the EEOC complaint. A split among and within the circuits has emerged, with some courts holding that *Morgan* requires separate exhaustion for each discrete act of post-filing retaliation. *See e.g. Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 851 (8th Cir. 2012); *Hernandez v. Gutierrez*, 656 F.Supp.2d 101, 2009 WL 2998115 *3 (D.D.C. Sept. 19, 2009). Those courts require that a Title VII plaintiff file a separate EEOC charge based on the post-filing acts of retaliation before proceeding in district court. Other courts have read *Morgan* more narrowly, and held that separate exhaustion is not required for post-filing acts of retaliation if those acts are reasonably related to the EEOC complaint. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir. 2009); *Swearingen-El v. Cook County Sheriff's Dept'.,* 602 F.3d 852, 864 n.9 (7th Cir. 2010); *Eberle v. Gonzales*, 240 Fed. Appx. 622, 628 (5th Cir. 2007); *Hazel v. Washington Metropolitan Area Transit Authority*, 2006 WL 3623693 *8 (D.D.C. Dec. 4, 2006).

Defendant points out that the Ninth Circuit has not come down squarely on either side of this split and urges this Court to follow the Tenth Circuit and hold that a plaintiff must file a separate EEOC charge in order to exhaust a claim of retaliation, even when the retaliation claim is "based on incidents occurring after the filing of the [original] EEO complaint." *Martinez*, 347 F.3d at 1210-11.

But this argument overlooks the fact that, even after *Morgan*, the Ninth Circuit has applied the "like or reasonably related" analysis for purposes of determining whether a claim alleging retaliation for filing the original EEOC charge has been administratively exhausted. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644-45 (9th Cir. 2004). In *Vasquez*, a county employee alleged he was retaliated against for filing a grievance against a co-worker and for later filing a discrimination charge with the EEOC. *Vasquez*, 349 F.3d at 644. The court began its analysis by noting that "[t]o establish subject matter jurisdiction over his Title VII retaliation claim, [the plaintiff] must have exhausted his administrative remedies by filing a timely charge with the EEOC." *Vasquez*, 349 F.3d at 644. For purposes of assessing its subject matter jurisdiction, the court considered whether the plaintiff's retaliation claim "fell within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge." *Vasquez*, 349 F.3d at 644. Because the plaintiff's

"EEOC charge only claimed harassment and different treatment," the court had to decide whether the retaliation claim was "reasonably related to the EEOC charge." *Vasquez*, 349 F.3d at 644.

The court concluded that the plaintiff had not exhausted his administrative remedies regarding retaliation for filing the EEOC charge because he had not presented the legal theory of unlawful retaliation in his charge, and because the operative facts regarding this part of his claim were not related to the facts in his EEOC charge. *Vasquez*, 349 F.3d at 645. But the court reached a different conclusion with respect to the plaintiff's claim that he had been retaliated against before he presented his EEOC charge for filing an earlier grievance against his co-worker. *Vasquez*, 349 F.3d at 645-46. Although the EEOC charge did "not contain the relevant legal theory of retaliation," it did "contain the relevant factual allegations" because it identified "the same acts he specified as retaliation in his claim" before the court. *Vasquez,* 349 F.3d at 645. The court found that "an investigation of the EEOC charge would likely have revealed" the plaintiff's earlier grievance, facts out of which a claim of retaliation could have grown. *Vasquez*, 349 F.3d at 646.

In the post-*Morgan* case of *Lyons v. England*, 307 F.3d 1092 (9th Cir. 2002), the plaintiffs alleged discriminatory failure to promote claims in their EEOC

complaint. In their subsequent Title VII action, the plaintiffs complained they had been wrongfully denied additional promotions after filing their EEOC complaint. *Lyons*, 307 F.3d at 1102-03. Notwithstanding *Morgan*, the Ninth Circuit found that no separate filing was necessary to exhaust the plaintiffs' new claims because they were consistent with the plaintiffs' original theory of the case, and so were reasonably related to the allegations in the EEOC complaint. *Lyons*, 307 F.3d at 1104-05.

Particularly in light of *Vasquez,* it appears that the "like or reasonably related to" exception to Title VII's administrative exhaustion requirement has survived *Morgan* and should apply where, as here, a plaintiff alleges she was retaliated against for initiating the EEOC complaint process. *See also*, *Padilla v. Bechtell Constr. Co.*, 2007 WL 1219737 *4 n. 4 (D. Ariz. 2007) (declining to directly consider *Morgan*'s effect on the "like or reasonably related to" exception but recognizing that it is still applied by the Ninth Circuit); *O'Riley v. Walmart, Inc.,* 2012 WL 3069152 (D. Nev. 2012) (finding plaintiff's claim that she was terminated in retaliation for filing her EEOC charge was not related to the facts in her EEOC charge and concluding that the court lacked subject matter jurisdiction over the claim).

The exception is now applied more narrowly than it was in *Bouman*,

however, wherein the court suggested that a retaliation claim is "related to" the EEOC charge simply by virtue of the fact that it alleges retaliation for filing the charge. *Vasquez* looked to a number factors for purposes of deciding whether the plaintiff's retaliation claim was reasonably related to his EEOC charge, including "the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination [was] alleged to have occurred.'" *Vasquez*, 349 F.3d at 644 (*quoting B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002)). Under *Vasquez*, the appropriate inquiry is whether the alleged retaliatory acts either fell "within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the [EEOC] charge." *Vasquez*, 349 F.3d at 644. In making this determination, the court should construe the EEOC charge "with utmost liberality." *B.K.B.*, 276 F.3d at 1100.

Even assuming the "like or reasonably related to" standard applies, Defendant maintains "Finley has still clearly not properly exhausted her administrative remedies with respect to her retaliation claim." Dkt. 24, at 12. Defendant is correct.

Finley never raised retaliation as a legal theory during the administrative

proceedings. Finley's only claims were that she had been discriminated against based on her race and gender when she was denied a promotion in October 2009, and twice in the spring of 2010 when her supervisor made comments she found offensive. Dkt. 23-2, at 2; 23-3, at 13. Nothing in Finley's formal EEOC complaint suggested that she had been subject to retaliation for initiating the EEOC process. Finley, who was represented by counsel at the time, filed her formal EEOC complaint in July 2010. Presumably, she could have included one of her current allegations, which is that Defendant retaliated against her for initiating the EEOC process in April 2010 by failing to promote her in June 2010. Dkt. 24, at 12. But for whatever reason, Finley did not do so.

Even when liberally construed, there is nothing to suggest that the facts alleged in Finley's EEOC charge would have led to an investigation encompassing her current claim that she was not promoted and was subjected to a hostile work environment in retaliation for initiating the EEOC process. Because Finley's EEOC charge did not contain the relevant legal theory of retaliation or set forth the operative facts upon which her retaliation claim is premised, her retaliation claim is not reasonably related to the EEOC charge.

Finley's retaliation claim fails for additional reasons as well. It is important to note that Finley's retaliation claim has two distinct components. She alleges

that Defendant retaliated against her for initiating the EEOC complaint process by (1) refusing to promote her in 2010 and 2011, and (2) subjecting her to a hostile work environment.

The only portion of the EEOC charge that the first component of Finley's retaliation claim could even arguably be "like or reasonably related to" is the portion alleging that Defendant failed to promote her in October 2009. If nothing else, those two claims share a common legal theory to the extent they rest on Defendant's allegedly wrongful failure to promote Finley to the GS-9 level. *See Lyons*, 307 F.3d at 1104-05 (finding that claims alleging failure to promote after plaintiffs filed their EEOC charge were reasonably related to plaintiffs' original theory of the case, which was that they had been denied promotions based on race). Finley's claim that Defendant retaliated against her by refusing to promote her is not related to the facts or theory presented in the rest of the EEOC charge, which simply alleged that Finley's supervisor made offensive race and gender based comments in March and April 2010.

As discussed above, because Finley did not initiate contact with the EEOC counselor within the requisite 45 day period, she failed to timely exhaust her claim that Defendant discriminated against her based on her race and gender by not promoting her in October 2009. Finley does not dispute that she failed to timely

exhaust her failure to promote claim.  At most, then, Finley's failure-to-promote

retaliation claim is arguably "like or reasonably related to" an unexhausted claim.

The "like or reasonably related to" exception to the exhaustion requirement may

allow a court to consider an unexhausted claim if it is reasonably related to an

exhausted claim, but it says nothing about allowing a plaintiff to proceed with an

unexhausted claim that is related to another unexhausted claim.  Accordingly,

Finley's claim that Defendant retaliated against her for initiating the EEOC

complaint process by refusing to promote her in 2010 and 2011 remains

unexhausted and this Court is without subject matter jurisdiction to consider it.

The second component of Finley's retaliation claim is that Defendant

retaliated against her for initiating the EEOC complaint process by subjecting her

to a hostile work environment.  A hostile work environment may be the basis for a

retaliation claim under Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir.

2000).  But to constitute an "adverse employment action" as required for purposes

of establishing a prima facie case of retaliation, the harassment must be

"'sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" *Ray*, 217 F.3d at 1245

(*quoting Harris v. Forklift Systems*, *Inc.,* 510 U.S. 17, 21 (1993)).

"An employee's decision to report discriminatory behavior cannot

immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). To prevail on a retaliation claim, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68.

The employer's conduct "must be both objectively and subjectively offensive." *Ray*, 217 F.3d at 1245. In determining "whether an environment is sufficiently hostile," courts should consider "the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ray*, 217 F.3d at 1245 (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

To establish a prima facie claim of retaliatory hostile work environment, Finley must also point to sufficient evidence to raise a genuine issue of material fact as to whether there was "a causal connection between the protected activity and the employer's action." *Ray*, 217 F.3d at 1240. "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her

protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). That "causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988).

As discussed above, Finley has not presented sufficient evidence to raise a genuine issue of fact as to whether she was subjected to hostile work environment. Regardless, the allegedly discriminatory comments she complains of in her hostile work environment claim were made before she initiated the EEOC process in April 2010 and so could not have been retaliatory. And although Finley claims that her supervisor used offensive bathroom habits to retaliate against her for filing her EEOC complaint, it is not clear from the record exactly when that offensive behavior allegedly began. Finley has not pointed to sufficient evidence to support an inference that the filing of her EEOC complaint caused her supervisor to suddenly stop flushing the toilet.

The only additional allegation Finley makes in support of her claim that she was subjected to a hostile work environment in retaliation for filing her EEOC charge is that her supervisor increased her workload in an effort to make her quit.

Dkt. 22, at 6.  Finley testified at her deposition that she was carrying the bulk of the workload in the office, and believed she had been assigned additional work in retaliation for filing her EEOC claim. Finley Dep. 137:19-139:24.  But Finley has not presented any documentary evidence to substantiate those allegations.  She does not point to any evidence that she had to work additional hours, or that she was otherwise subjected to adverse treatment that would reasonably deter employees from engaging in protected activity.  Nor has Finley specified exactly when she believes her workload increased or presented any other evidence of causal connection between the filing of her EEOC complaint and the alleged increase in her workload.

Finley has thus failed to present sufficient evidence to raise a genuine issue of material fact as to whether she was "subjected [] to an adverse employment action" or whether there was "a causal connection between the protected activity and the employer's action."  *Ray*, 217 F.3d at 1240.  Because Finley has thus failed to establish a prima facie case of a retaliatory hostile work environment, the second component of her retaliation claim fails on this basis as well.

## III.  <u>Conclusion</u>

Based on the foregoing,

IT IS RECOMMENDED that the Defendant's Motion for Summary

Judgment be GRANTED and this case be dismissed.

The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel on or before March 11, 2013, and any response to objections must be filed on or before March 14, 2013. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

DATED this 5th day of March, 2013

Jeremiah C. Lynch
United States Magistrate Judge